UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

WADE ROBERTSON,                                    10 Civ. 8442 (LTS)(HBP)

                          Plaintiff,

              -against-

WILLIAM C. CARTINHOUR, JR., VESNA KUSTUDIC,
TANJA MILICEVIC (a.k.a. TANJA POPOVIC),
ALEKSANDAR POPOVIC, ALBERT SCHIBANI,
PATRICK J. KEARNEY, MICHAEL BRAMNICK,
ROBERT S. SELZER, CARLTON T. OBECNY, JAMES
G. DATTARO, NEIL GURVITCH, ANDREW R.
POLOTT, H. MARK RABIN and ELYSE L.
STRICKLAND,

                          Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS
ALBERT SCHIBANI, PATRICK J. KEARNEY,
MICHAEL BRAMNICK, ROBERT S. SELZER,
CARLTON T. OBECNY, JAMES G. DATTARO,
NEIL GURVITCH, ANDREW R. POLOTT,
H. MARK RABIN and ELYSE L. STRICKLAND'S
MOTION TO DISMISS**

Of Counsel:
*Peter C. Contino, Esq.*
*Peter R. Chatzinoff, Esq.*
*Carol A. Lastorino, Esq.*

## PRELIMINARY STATEMENT

Plaintiff, an attorney dismayed that his abusive self-enrichment at the expense of his partner/client, William Cartinhour, has been exposed in another federal District Court where plaintiff previously commenced an action against Mr. Cartinhour, has now brought this action attacking the proceedings in the prior pending action, hoping that this Court will find merit, where the Court in the prior action did not, and jurisdiction where none exists.

This Memorandum of Law is thus respectfully submitted in support of defendants Albert Schibani, Patrick J. Kearney, Michael Bramnick, Robert S. Selzer, Carlton T. Obecny, James G. Dattaro, Neil Gurvitch, Andrew R. Polott, H. Mark Rabin and Elyse L. Strickland's (hereinafter the "Attorney Defendants") Motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, seeking dismissal of this action for its failure to state a cognizable claim and for lack of personal jurisdiction over the Attorney Defendants.   In the alternative, the Motion seeks transfer of the action pursuant to 28 U.S.C. §1404(a), to the District Court of the District of Columbia, where the prior related action is pending and the issues have been litigated for over a year, and a stay of proceedings in this action pending this motion and the outcome of the prior action.

The Complaint in this action[1] represents plaintiff's latest in a series of spurious efforts to escape the justice of the D.C. District Court -- a jurisdiction that he initially selected -- as that Court has been adjudicating the very issues that plaintiff reprises in this action, but apparently, in a manner not to plaintiff's liking.   As detailed below, plaintiff commenced a declaratory judgment action, *Robinson v. Cartinhour,* 09-Civ 1642 (ESH) (hereinafter the "D.C. Action"), in the D.C. District Court in August 2009 against co-defendant William C. Cartinhour, Jr., (hereinafter "Cartinhour"), seeking the Court's validation of partnership and related agreements

---

[1] *Exh. A;* all exhibits referenced are to those annexed to the accompanying Declaration of Peter C. Contino, Esq.

between plaintiff -- an attorney himself -- and Cartinhour, whereby plaintiff took over $3.5 million of Cartinhour's funds.  That Court has found the key agreements which purportedly allowed plaintiff to abscond with his client's funds, and to be insulated from any potential claim, to be "so one-sided and unfair that [they are] not enforceable in a court of law".[2]  In granting Cartinhour a preliminary injunction in that action (which is awaiting a trial in February), the District Court ruled that Cartinhour has a substantial likelihood of success on the merits of his claims.[3]

Plaintiff has thus commenced this action, in a venue inappropriate to his claims and without personal jurisdiction over the Attorney Defendants, to avoid the inevitable judgment against him in the D.C. Action.  In an act of blatant forum shopping, he has opened a new front, here attacking Cartinhour, his attorneys in the D.C. Action (the Attorney Defendants comprise all the then equity and non equity partners in the firm representing Cartinhour in the D.C. Action, and Schibani, who represented Cartinhour just prior to that action) and others, alleging specious and vacuous claims of the Attorney Defendants' RICO, fraud and other claims that allegedly arise from their litigation of the D.C. Action.  Each of plaintiff's claims in this action is without merit as a matter of law, as set forth below.  In the alternative, if this Court does not order dismissal of the Complaint, then transfer of this action to the D.C. District Court for adjudication of the duplicitous and parallel claims is warranted.  Moreover, if not dismissed, this action should be stayed, pending this motion and resolution of the D.C. Action.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint in the D.C. Action on August 28, 2009[4], seeking declaratory judgment against Cartinhour[5].  Plaintiff alleged in the D.C. Action, as he does in the Complaint

---

[2] *See* transcript of proceedings, March 26, 2010, *Exh. B at p.115.*

[3] *See Exh. B at p.113.*

[4] *See* D.C. Action Complaint, *Exh. C.*

2

in this action, that he and Cartinhour were "engaged together . . . in a continuing and active [business] partnership" located in the District of Columbia.[6]   The nature of the alleged partnership (called "W.A.R. LLP"), for which initial agreements were executed in 2004, was that Cartinhour would transfer funds -- which would eventually exceed $3.5 Million -- and plaintiff would continue as non-appearing co-counsel for plaintiffs in a class-action securities lawsuit in the Southern District, later dismissed by the District Court in 2005, that dismissal affirmed by the Second Circuit in 2006.[7]

Plaintiff further alleges that Cartinhour had signed a written Indemnification Agreement[8], stating that Cartinhour "w[ould] not make any claims or demands, or file any legal proceedings against [plaintiff] Wade A. Robertson," including claims concerning "any future injuries, losses, and damages not now known or anticipated, but which may later develop or be discovered."

Plaintiff alleges in the D.C. Action, and again in the Complaint here, that after the class-action suit had been dismissed, and after it became apparent that plaintiff had duped Cartinhour, his attorneys sent plaintiff written demands for money and threatened a lawsuit against him.[9] Plaintiff alleges in the D.C. Action that these demands breached the Indemnification Agreement and, therefore, he is entitled to a judgment declaring Cartinhour's obligations to release, hold

---

[5]  Described in detail in the instant Complaint, *Exh. A at ¶ 79 et. seq.*

[6]  *Exh. A at ¶¶ 35-37; Exh. C   at ¶ 9.*

[7]  *See* Complaint, *Exh. A at ¶¶ 20-21.* The case, *In re Initial Public Offering Sec. Litig.* (*Liu v. Credit Suisse First Boston ["Liu"]*, was dismissed by the district court in April 2005. 383 F. Supp. 2d 566 (S.D.N.Y. 2005), *aff'd sub nom, Tenney v. Credit Suisse First Boston Corp.*, No. 05-3430, 2006 U.S. App. LEXIS 13050, 2006 WL 1423785, at *1-2 (2d Cir. May 19, 2006), *cert. denied sub nom, Liu v. Credit Suisse First Boston Corp.*, 549 U.S. 1077, 127 S. Ct. 733, 166 L. Ed. 2d 562 (2006).

[8]  *See Exh. D*

[9]  *See Exh. C at ¶¶ 12-15; Exh. A at ¶¶ 72-75;* letter of defendant Schibani, *Exh. E.*

harmless, and indemnify plaintiff.[10]  In reprising these allegations in the instant action, plaintiff alleges that the demand letter constituted an "extortion attempt."[11]

In October 2009, Cartinhour filed his answer and a countersuit against plaintiff in the D.C. Action.[12]  Cartinhour, a then 82-year-old retiree, alleged that he had been introduced to plaintiff, who had represented that he had been seeking an investor on behalf of some plaintiffs and their counsel in a "multi-billion dollar [securities] claim with a high likelihood of success."[13] In reliance upon those representations, Cartinhour contributed $3.5 million, of which $1.5 million was contributed after the securities litigation already had been dismissed by the Southern District.[14]  Cartinhour asserts that he did not know that the case had been dismissed, and plaintiff continued to advise him that he was "confident that [their] position continue[d] to grow stronger and that [they] w[ould] ultimately be wildly successful in this endeavor." [15]

Cartinhour also alleges in the D.C. Action that plaintiff had acted as his attorney and had advised him not only about investing in the partnership, but also with respect to his will, estate planning, and taxes, and Cartinhour claimed that he had paid Robertson at least $40,000.00 for those services.[16] Cartinhour countersued for accounting, fraud, breach of fiduciary duty, breach of partnership agreement, legal malpractice, negligent misrepresentation, conversion, and derivative action.[17]

Plaintiff filed several motions in the D.C. Action, premised upon his contentions that Cartinhour's claims were barred by the Indemnification Agreement, and that his fraud claims

---

[10] *See Exh. C at* ¶¶ 16, 24.

[11] *See* Complaint *Exh. A at* ¶ 72.

[12] *See Exh. F with amendments.*

[13] *Id.* at ¶ 6.

[14] *Id.* ¶¶ 10, 15, 21.

[15] *Id.* ¶¶ 17, 19, 21; *See also Exh. G,* Mar. 15, 2006 letter from plaintiff to Cartinhour.

[16] *See Exh. F at* ¶ 68.

[17] *Id.* at ¶¶ 34-81.

were barred by the statute of limitations.[18]   In addition to the partnership agreement[19], plaintiff also relied upon an attestation of no attorney-client relationship, signed by Cartinhour the same day as the Indemnification Agreement, stating that Cartinhour "ha[s] no claims against [plaintiff] of any kind with respect to him in his profession as an attorney or that could arise from any attorney-client relationship, whether actual or mistakenly assumed, or otherwise"[20].

In the course of litigation in the D.C. Action, Cartinhour moved for a preliminary injunction to freeze plaintiff's assets, asserting that plaintiff had taken over $3.4 million in partnership assets in the form of loans to himself of partnership funds, on long term notes, without interest, which funds he had largely dissipated.   After conducting a hearing on the preliminary injunction, at which plaintiff was present but refused to testify (asserting his Fifth Amendment privilege against self-incrimination), the Court issued its decision granting the preliminary injunction on the record.   Among other things, the Court in the D.C. Action made specific findings of fact and conclusions of law:

(a)   that the evidence showed a substantial likelihood of Cartinhour's success on the merits, irreparable harm, a lack of substantial harm to plaintiff, and that the injunction was in the public interest;[21]

(b)   that the evidence convincingly showed that plaintiff owed a fiduciary duty to Cartinhour as his partner and as his attorney;[22]

---

[18]  *See Exh. D; Exh. H (Robertson v. Cartinhour, 691 F.Supp. 2d 65, 70).*

[19]  The D.C. Court (*Exh. H*) summarized the agreement as follows: "the partnership agreement indicates that Cartinhour contributed 99.9 percent of the partnership's $ 3,503,500.00 in capital . . . that [plaintiff] has "exclusive" authority to manage the business of the Partnership . . . Cartinhour has no control over the partnership and no authority . . . The agreement also allows loans to individual partners from the partnership in any amount and does not require repayment until liquidation . . . . Although the original agreement required that operating and financial statements be provided to all partners on a regular basis, these provisions were removed from the agreement in 2005." (*ref. omitted*).  691 F.Supp 2d at 70 (FN 5).

[20]  *See Exh. J*

[21]  *Exh. B, pgs. 107-108, 113.*

[22]  *Exh. B, pgs. 108-110, 112-113.*

(c)     that plaintiff had absconded with virtually all of the partnership's money in interest-free personal loans that were not used for partnership business, but were lost in personal securities trading, and that there was evidence that plaintiff misled Cartinhour as to plaintiff's actions;[23]

(d)     that there was evidence that Cartinhour relied on plaintiff as his attorney, that legal services were provided by plaintiff and paid for by Cartinhour and that plaintiff violated the Code of Professional Ethics;[24] and

(e)     that the Indemnity Agreement on which plaintiff relies is so one-sided and unfair as to be unconscionable and unenforceable in a court of law.[25]

Plaintiff commenced the instant action against Cartinhour, his attorneys (the Attorney Defendants) and others in November 2010[26], immediately after the filing of the Pre-Trial Statement in the D.C. Action. Cartinhour moved in the D.C. Action to stay the instant action. Although the D.C. Court denied said motion without prejudice, in its Memorandum of Decision, filed December 30, 2010, Judge Huvelle gives a detailed recitation of plaintiff's frivolous motions, appeals, surreptitious tactics and sanctions imposed upon plaintiff's counsel for same.[27] The Court then addressed the motion to stay this action while the D.C. Action proceeded:

> The instant motion arises from Robertson's recent attempt to find a new, perhaps more receptive, forum. Apparently dissatisfied with the proceedings to date, Robertson filed suit against Cartinhour, all of his counsel, and a cast of others in the Southern District of New York on November 9, 2010. See, Robertson v. Cartinhour, No. 10 CV 8442 (S.D.N.Y. Nov. 9, 2010) ("the New York action"). Although styled as a civil RICO complaint, **the New York action centers largely**

---

[23] *Exh. B, pgs. 110-111.*

[24] *Exh. B, pgs. 112-113.*

[25] *Exh. B, pgs. 115-116.*

[26] At the same time, plaintiff commenced a Bankruptcy proceeding in the name of the partnership (W.A.R. LLP) in the District Court for the Western District of Tennessee, initiating two adversary proceedings against Cartinhour. The Bankruptcy Court, by Order dated January 4, 2011 (*Exh. L*), transferred venue to the District of Columbia District, finding that "[t]he footprints of the district court case in D.C. are deep ... the footprints of this court are light."

[27] *See Exh. K.*

**on the same set of operative facts at issue in this case,** namely Robertson's claims that Cartinhour threatened to sue him in violation of certain written agreements allegedly signed by Cartinhour, as well as events that have occurred in this litigation. Indeed, Robertson has named every partner in the law firm representing Cartinhour in this action as a defendant in the New York action, alleging that Cartinhour and his lawyers conspired to violate various federal laws, including RICO, during the course of the litigation before this Court. Cartinhour now seeks to enjoin Robertson from proceeding in the New York action and from filing any further lawsuits against Cartinhour in federal court.[28] *[emphasis added]*

Judge Huvelle denied the motion to stay this action, finding insufficient evidence that plaintiff's conduct rose to the level of being a vexatious litigant, but she did so without prejudice, and warned plaintiff as follows:

The Court cautions Robertson, however, that if he persists, "at some point a continu[ed] pattern of groundless and vexatious litigation will support an order against further filings or complaints without the permission of the courts," as well as other sanctions.[29]

The trial of the D.C. Action is scheduled for February 22, 2011.

## POINT I

### PLAINTIFF'S COMPLAINT AGAINST THE ATTORNEY DEFENDANTS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a motion to dismiss, the complaint must plead enough facts to state a claim to relief that is plausible on its face.[30] To state a plausible claim to relief, a complaint's factual allegations must be enough to raise a right to relief above the speculative level.[31] Thus, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint must be dismissed.[32] Further, while the Court must accept as true all of the factual allegations set out in plaintiff's complaint, legal conclusions, deductions or

---

[28] *Exh. K at pgs. 1-4.*

[29] *Exh. K at p. 6.*

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[31] *Id.* 550 U.S. at 555.

[32] *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

opinions couched as factual allegations are not given a presumption of truthfulness.[33]  As set

forth herein, plaintiff's complaint wholly fails to state a claim against the Attorney Defendants

and therefore, must be dismissed as a matter of law.

A.    *Plaintiff's Claims for RICO, Fraud and Tortious Interference are Barred By the Noerr-*
      *Pennington Doctrine*

The First Amendment guarantees "the right of the people . . . to petition the Government

for a redress of grievances.[34]"  Included in these petitioning rights, is a party's right to access the

courts.[35]  In order to protect this right to petition, the *Noerr-Pennington* doctrine[36] immunizes

parties from liability for commencing litigation.  Indeed, courts have held that this immunity

applies equally to efforts incident to litigation such as pre-suit "threat" letters.[37]

While originally created in the context of antitrust law, *Noerr-Pennington* immunity is

applicable to RICO actions and to state-law claims such as fraud and tortious interference.[38]

---

[33] *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("while the pleading standard is liberal, bald assertions and conclusions of law will not suffice").

[34] *U.S. Const. Amend. 1.*

[35] *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

[36] See *T.F.T.F. Capital Corp. V. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (holding that "the *Noerr-Pennington* doctrine generally immunizes from liability a party's commencement of a prior court proceeding).

[37] *See Primetime 24 Joint Venture v. National Broadcasting Company, Inc.*, 219 F.3d 92, 100 (2d Cir. 2000) (holding that "[c]ourts have extended Noerr-Pennington to encompass concerted efforts incident to litigation, such as prelitigation 'threat letters'"); *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345 (S.D.N.Y. 1997) (holding that acts incidental to protected litigation such as sending letters threatening court action are entitled to immunity to the same extent as the related litigation).

[38] *Bath Petroleum Storage, Inc. v. Market Hub Partners*, L.P., 2000 U.S. App. LEXIS 25440 (2d Cir. Oct. 11, 2000). *See also Sosa v. DIRECTTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (extending *Noerr-Pennington* immunity to RICO lawsuit); *734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) (holding that the rationale of the *Noerr-Pennington* doctrine "is equally applicable to RICO suits"); *Astra Media Group, LLC v. Clear Channel Taxi Media, LLC*, 679 F. Supp. 2d 413, 430 (S.D.N.Y. 2009) (holding that plaintiff's claim for tortious interference with contract was barred by the *Noerr-Pennington* doctrine); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y. 2004) (applying Noerr-Pennington doctrine where plaintiff claimed that the defendant tortiously interfered with a prospective business advantage by lobbying a governmental entity).

As set forth herein, the conduct underlying plaintiff's instant claims against the Attorney Defendants involves the interposition of legitimate counterclaims in the D.C. action and the pre-suit demand letters incident to that litigation. Such activity is directly related to the Attorney Defendants', as agents for Cartinhour, exercising his First Amendment right to seek redress in the courts and falls squarely within the protection of the *Noerr-Pennington* doctrine.[39]

Plaintiff cannot avail himself of the narrow "sham" exception to *Noerr-Pennington* immunity because he has not and cannot allege that the challenged activity was baseless. In determining whether a litigation is a "sham" courts look to whether it is "objectively baseless" litigation in which no reasonable litigant could realistically expect success on the merits.[40] That is clearly not the case here. Significantly, Judge Huvelle granted Cartinhour's motion for preliminary injunctive relief and enjoined Robertson from "moving, dissipating, concealing, spending, transferring, or otherwise wasting or diminishing the value" of various assets until entry of a final judgment.[41] Thus, the fact that the D.C. Court was persuaded by the defendants' arguments made in the motion, including the argument that Cartinhour is likely to succeed on the merits, and granted injunctive relief clearly reflects that the D.C. litigation is not a sham.

B.   *Plaintiff's Defamation Claims are Barred by the Absolute Litigation Privilege and Are Time Barred As Well*

Plaintiff's defamation claims do not even identify the defamatory statements allegedly made by the Attorney Defendants. While the complaint is completely silent in this regard, the only statements attributed to the Attorney Defendants in the entire Complaint are those that were made in connection with the D.C. Action through demand letters prior to the lawsuit and in the

---

[39] *See Freeman v. Lasky, Haas & Cohler, P.C.*, 410 F.3d 1180 (9th Cir. 2005).
[40] *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).
[41] Transcript of March 26, 2010 hearing, Exh. B, pgs. 107-108.

pleadings and motions themselves, or allegedly in communicating with or about potential witnesses in connection with Accountant Gray.[42]

Under either District of Columbia or New York law, plaintiff's defamation claims are barred by the absolute litigation privilege which provides that statements made in the course of judicial proceedings are protected by absolute immunity from defamation suits.[43]  The judicial proceedings privilege does not protect only statements that are made in the institution of a lawsuit or in the course of litigation but to statements that are made prior to the commencement of litigation such as written correspondence concerning a threatened lawsuit, or in contacting witnesses or potential witnesses.[44]  Insofar as the only communications of the Attorney Defendants, referenced in the Complaint, were made preliminary to or during the D.C. Action, they are absolutely privileged subjecting plaintiff's defamation claims to dismissal as a matter of law.[45]

Moreover, under the law of both District of Columbia and New York, defamation claims are subject to a one year statute of limitations.[46]  Plaintiff commenced this action on November 9, 2010.  Therefore, any defamation claim predicated on statements made prior to November 9, 2009 would be time-barred here.  This would include all of the pre-suit demand letters from the Attorney Defendants identified in the Complaint as those letters are dated January, February,

---

[42] See Exh. A, ¶ ¶ 72-98.

[43] See The Armenian Assembly of America, Inc. v. Cafesjian, 597 F. Supp. 2d 128 (D.D.C. 2009); Kelly v. Albarino, 485 F.3d 664 (2d Cir. 2007).

[44] See Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc., 774 A.2d 332, 338 (D.D.C. 2001) (holding that along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to or in the course of the judicial proceeding); McBride v. Pizza Hut, Inc., 658 A.2d 205, 208 (D.D.C. 1995) (holding that the letter which allegedly provided a basis for plaintiff's defamation claim was absolutely privileged as a matter of law).

[45] See Exh. A, ¶¶ 72-98.

[46] See D.C. Code § 12-301(4); N.Y. C.P.L.R. § 215 (3).

August and September of 2009.[47]   In addition, plaintiff cannot predicate a defamation claim on the contents of the counterclaims as those counterclaims were interposed in the D.C. Action on October 28, 2009.[48]

C.   *The Complaint Fails To Plead Any Cause Of Action Against The Attorney Defendants Under RICO*

18 U.S.C. § 1962(c) provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt".

In an attempt to plead the foregoing, plaintiff conclusorily alleges that the individual defendants are members of an enterprise.[49]   However, the Complaint is devoid of any allegations of participation or management over the enterprise by the Attorney Defendants.   The only facts pertaining to the Attorney Defendants' involvement are the pre-litigation letters sent to plaintiff and prosecution of the counterclaims in the D.C. Action while acting as attorneys for co-defendant, Cartinhour.   This is simply insufficient to constitute RICO participation as a matter of law.

The law is well-settled that the provision of legal services does not constitute participation sufficient to ground an allegation of a violation of § 1962(c).[50]   In the instant case,

---

[47] *See* Complaint, Exh. A at ¶¶ 72, 74, 76, 77 and 78.
[48] *See id.* at ¶ 80.
[49] *See* Complaint, Exh. A at ¶ 129.
[50] *Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) (dismissing RICO claims against attorney for representing a party in various "flip" real estate transactions and holding that the plaintiffs adduced no evidence to show that the attorney in any way participated in the management or direction of a RICO enterprise). *See also Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F.Supp. 585 (E.D.N.Y. 1993) (dismissing RICO claims against an attorney whose role was confined to providing legal advice and legal services and holding that the plaintiff adduced no facts to suggest that the attorney's actual or projected role was to lead, run, manage or direct any part of the enterprise and, therefore, the attorney did not participate in the conduct of an enterprise and did not violate § 1962(c)).

11

the complaint alleges nothing more than the Attorney Defendants' role as attorneys for the co-defendant. Virtually all of the conduct ascribed to the Attorney Defendants relates to the litigation itself. Thus, plaintiff has not, and cannot. allege that the Attorney Defendants had any management role or control over any purported enterprise. The Supreme Court has made clear "that one is not liable under [§1962(c)] unless one has participated in the operation or management of the enterprise itself."[51] Insofar as plaintiff cannot make out the requisite participation element, his § 1962(c) claim is fatally defective and cannot be sustained.[52]

Moreover, plaintiff fails to allege any predicate acts that amount to or pose a threat of continued criminal activity.[53] Plaintiff concludes in his Complaint, with no supporting facts whatsoever, that the predicate acts consist of mail and wire fraud, obstruction of justice, retaliating against a witness, bank fraud and extortion. However, the allegations in the Complaint as to the Attorney Defendants do not identify any acts beyond the provision of legal services related to the D.C. Action, which palpably fail to constitute the pattern of racketeering activity under the statute.

Plaintiff also fails to allege the existence of an enterprise for RICO purposes as he merely concludes that the Attorney Defendants' law firm and the Cartinhour Serbian Charity are enterprises. For an association of individuals to constitute an enterprise, the individuals must "share a common purpose to engage in a particular fraudulent course and work together to achieve such purpose."[54] "Conclusory allegations that disparate parties were associated by virtue

---

[51] *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

[52] *See Sedima S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 497 (1985) (holding that a civil RICO claim is insufficient and must be dismissed if it fails to pass pleading muster even on a single element).

[53] *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

[54] *See Moll v. U.S. Life Title Ins. Co.*, 654 F. Supp 1012, 1031 (S.D.N.Y.1987).

of their involvement" in the same industry are insufficient to identify a RICO enterprise.[55]

Plaintiff has not and cannot allege that the Attorney Defendants intended to participate in a

scheme together or that defendants shared a common purpose to defraud plaintiff.

In addition, plaintiff has not pled and cannot show a proximate causal link between any

alleged acts of the Attorney Defendants and his alleged injury.[56]  Plaintiff alleges that he was

injured through the loss of his investment "in contributed services" to the partnership.  Clearly,

whatever losses plaintiff may or may not have suffered were not causally related to any acts of

the attorneys who merely provided legal services to Cartinhour.  Since plaintiff has not suffered

any RICO damages, which must be "clear and definite" damages to his business or property, he

lacks standing under RICO to bring the instant RICO claims against the Attorney Defendants.[57]

Finally, insofar as plaintiff's substantive RICO claims are meritless for the reasons set

forth herein, his conspiracy claim under § 1962(d) must also be dismissed.[58]

### D. *The Allegations of The Complaint Fail To Plead the Elements of a Fraud Claim or Meet The Particularity Requirements of Rule 9(b)*

Plaintiff's claim for fraud against the Attorney Defendants is not sustainable insofar as

plaintiff is unable to plead or prove the constituent elements of a fraud claim.  To plead a prima

facie case of fraud under District of Columbia or New York law, the plaintiff must allege: (i)

---

[55] *See First Nationwide Bank v. Gelt Funding Corp.*, 820 F.Supp 89, 98 (S.D.N.Y. 1993). *See also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("merely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim").

[56] *See Powers v. British Vita, P.L.C.*, 57 F.3d 176 (2d Cir. 1995) (holding that the alleged RICO violation must be both the "but for" cause or the cause in fact of the injury, and the legal, or proximate cause).

[57] *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F. 3d 763, 768 (2d Cir. 1994) (holding that a RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation).

[58] *See First Capital Asset Management, Inc.  v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) (dismissing plaintiff's RICO conspiracy claims because they were dependent on their substantive RICO claims); *M'Baye v. New Jersey Sports Production, Inc.*, 2007 U.S. Dist. LEXIS 9101 (S.D.N.Y. Feb. 7, 2007) (holding that "[w]here a substantive RICO claim is deficient, a RICO conspiracy claim under § 1962(d) must be dismissed").

misrepresentation of a material existing fact; (ii) scienter; (iii) justifiable reliance; and (iv) injury.[59]   Moreover, Fed R. Civ. P. 9(b) requires that in all allegations of fraud, "the circumstances constituting fraud . . . be stated with particularity."[60]

Where a fraud claim is premised on alleged misrepresentations, allegations of fraud must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.[61]   While fraudulent intent may be averred generally, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.[62]   Conclusory allegations that the defendants' representations were intended to aid in the commission of a fraud are inadequate both under federal and state law.[63]

An accusation of fraud, especially against lawyers, is a serious charge.   That accusation alone causes substantial harm to professionals.[64]   Rule 9(b) is designed to protect reputations from injury caused by unsubstantiated charges of fraud.[65]   Rule 9(b) pleading requirements have, therefore, been vigorously enforced where fraud is alleged against professionals such as attorneys.[66]

Judged by these standards, plaintiff's fraud claim against the Attorney Defendants is plainly inadequate.   The Complaint in this action does not set forth a material misrepresentation

---

[59] *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (S.D.N.Y. 1987); *Ballard v. Level 2 Development*, 697 F. Supp. 2d 101, 107 (D.D.C. 2010).

[60] *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994).

[61] *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).

[62] *Shields*, 25 F.3d at 1128.

[63] *See, e.g., Browning Ave. Realty Corp. v. Rubin*, 207 A.D.2d 263, 615 N.Y.S.2d 360 (1st Dep't 1994).

[64] *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 337 (S.D.N.Y. 1993).

[65] *See In Re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 666 F. Supp. 547, 557 (S.D.N.Y. 1987).

[66] *See Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971).

made by the Attorney Defendants. The only statements that plaintiff contends were made by the Attorney Defendants were in regard to the pre-suit demand letters and the pleadings and motions in the D.C. Action. The Complaint is also completely silent as to any detrimental reliance on plaintiff's part or that the Attorney Defendants intended to deceive plaintiff. In short, the allegations in the complaint simply do not support a fraud claim against the Attorney Defendants and certainly do not meet the stringent pleading standard set forth in F.R.C.P. Rule 9(b).

E.    *The Complaint Fails To State A Claim For Tortious Interference Against The Attorney Defendants*

Plaintiff's vague and conclusory tortious interference claim also fails as a matter of law. Plaintiff simply alleges in his Complaint that all of the defendants are liable to him for damages "resulting from their tortious interference with the Plaintiff's contracts, business relations, and economic development."[67] However, plaintiff does not identify the contract, business relation or economic development that was allegedly interfered with.

To state a cause of action for tortious interference with contract, plaintiff must plead (1) the existence of a valid contract; (2) the defendant's knowing of that contract; (3) the defendant's intentional procuring of the breach of that contract, and (4) damages.[68] The only reference to tortious interference in the complaint is the allegation that after the demand letters were sent to plaintiff, plaintiff wrote back to defendant, Obecny, and warned that he "might be tortiously interfering with the W.A.R. LLP partnership."[69] Insofar as the alleged "interference" apparently consisted of a pre-litigation demand letter, plaintiff cannot plead or prove a tortious interference with contract claim. The relationship created between an attorney and his client is that of principal and agent and, therefore, an attorney is not liable for inducing his principal to breach a

---

[67] *See Exh. A,* ¶ 149.
[68] *See Astra Media Group, LLC v. Clear Channel Taxi Media, LLC,* 679 F. Supp. 2d 413, 431 (S.D.N.Y. 2009).
[69] *See Exh. A,* ¶ 77.

contract with a third person, where, as here, he is acting on behalf of his principal within the scope of his authority.[70]

Similarly, plaintiff cannot plead or prove a tortious interference claim with prospective economic advantage. To state such a cause of action, plaintiff must plead (1) that he had a business relationship with a third party; (2) that the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendants' interference caused injury to the relationship with the third party.[71] The alleged prospective contractual relation or business with a third party stated in the Complaint is an alleged payroll tax recovery business that plaintiff intended to enter into with Tim Gray.[72] Plaintiff alleges that this business opportunity was purportedly thwarted by the "the false allegations against Mr. Robertson" made to Gray by an unknown caller.[73] Plaintiff does not allege that any of the Attorney Defendants even knew of this business opportunity with Gray let alone intentionally interfered with the relationship out of malice or through illegal means. Clearly, plaintiff's claim cannot be sustained here as a matter of law.

## POINT II

### THE COMPLAINT AGAINST THE ATTORNEY DEFEDANTS SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THEM

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over the Attorney Defendants. A plaintiff bears the burden of

---

[70] See *Herrick Company, Inc. v. Vetta Sports, Inc.*, 1996 U.S. Dist. LEXIS 17841 (S.D.N.Y. Dec. 3, 1996) (holding that an attorney cannot be liable to third parties for injuries caused by services performed on behalf of a client or advice offered to that client); *Fischer v. Estate of Flax*, 816 A.2d 1, 6 (D.C. 2003) (holding that an attorney who pursues in good faith his or her client's interests cannot be held liable to an opposing party).

[71] See *Astra*, 679 F. Supp. 2d at 431-32.

[72] See *Exh. A*, ¶ 107.

[73] See *id. at* ¶ 108.

establishing through affidavits and supporting materials the court's jurisdiction over a defendant.[74] In a diversity action, the law of the state in which the district court sits governs personal jurisdiction over a non-resident defendant.[75] To determine whether personal jurisdiction exists, the court must undertake a two-step inquiry and decide: (1) whether there is jurisdiction under New York Civil Practice Law and Rules ("CPLR"); and (2) if so, whether the exercise of personal jurisdiction is consistent with the requirements of federal due process.[76]

A. *No Basis To Find Jurisdiction Under New York's General Jurisdiction Statute*

"General" personal jurisdiction in New York may be obtained under CPLR § 301 only if a defendant's contacts with the state are "substantial". This requires a showing that a defendant is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of [its] presence in this jurisdiction."[77] A foreign defendant is subject to jurisdiction in New York if it does business here "not occasionally or casually, but with a fair measure of permanence and continuity".[78] Courts focus such factors as the existence of an office in New York, the solicitation of business in the state, the presence of bank accounts and other property in the state, and the presence of employees of the foreign defendant in the state."[79]

None of these requisite criteria of "doing business" in New York are present here. Plaintiff does not allege in his Complaint any New York activities, business or other conduct by

---

[74] *Whitaker v American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

[75] *See United States v. First National City Bank*, 379 U.S. 378, 381-82 (1965); *see also Communication Partners Worldwide, Inc. v. Main Street Resources*, 2005 U.S. Dist. LEXIS 14911, *6 (S.D.N.Y. July 25, 2005).

[76] *See A.1. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 82 (2d Cir. 1993). *See also Communication Partners Worldwide, Inc., supra*, 2005 U.S. Dist. LEXIS 14911 at *7, *citing Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).

[77] *Aqua Products, Inc. v. Smartpool, Inc.*, 2005 U.S. Dist. LEXIS 17246, *9 (S.D.N.Y. Aug. 17, 2005), *citing Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983).

[78] *Landoil Resources Corp. v. Alexander & Alexander Services*, 918 F.2d 1039, 1043 (2d Cir. 1990).

[79] *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

the Attorney Defendants at all, much less any that could constitute a continuous and systematic course of doing business here. Indeed, as evidenced by the affidavits of each of the Attorney Defendants, they do not live or work in New York and they maintain no offices or bank accounts in New York. Even the limited ownership of property in New York by three of the Attorney Defendants is insufficient to meet the CPLR § 301 standard.[80]

B. *No Basis To Find Personal Jurisdiction Under New York's Specific Jurisdiction Statute*

Jurisdiction under CPLR § 302 requires a "substantial relationship" between the in-state contacts and the cause of action sued upon.[81] Plaintiff has failed to allege any "substantial relationship" between any in-state contact by the Attorney Defendants and the claims alleged by plaintiff. In fact, the claims have virtually no connection with New York. The entirety of the allegations addresses contacts leading up to and during the course of ongoing federal litigation in the D.C. Action. Thus, plaintiff has not met his burden to confer personal jurisdiction over the Attorney Defendants based on CPLR § 302(a).[82]

Plaintiff also cannot assert "specific" personal jurisdiction over the Attorney Defendants based on CPLR § 302(a)(3)(i), which would require that plaintiff's claims arise out of the contact of the defendants with the State of New York.[83] All alleged interactions between plaintiff and the Attorney Defendants took place exclusively in and around the District of Columbia, and none

---

[80] *See Palmer v. Globalive Comm. Corp.*, 2008 U.S. Dist Lexis 58045, *10-11 (S.D.N.Y. Aug. 1, 2008)(finding no personal jurisdiction over a defendant who did business in New York every few months, served as a director of a New York-based corporation and was a member of a partnership that owned property in New York).

[81] *See Beacon Enterprises, Inc., supra,* 715 F.2d at 766. *See also McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 383, 229 N.E.2d 604, 283 N.Y.S.2d 34 (1967).

[82] *See Aqua Products, Inc., supra,* 2005 U.S. Dist. LEXIS 17246 at *20 (in failing to find personal jurisdiction under New York's long-arm statute, the court held that plaintiff failed to articulate "a substantial relationship between defendants' contacts in New York and plaintiff's cause of action").

[83] *See Communication Partners Worldwide, Inc., supra,* 2005 U.S. Dist. LEXIS 14911 at *7.

occurred in New York.[84]   Further, CPLR § 302(a)(3)(i) requires a showing that a defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state".[85] None of these Attorney Defendants render legal services here, thus there is no basis to assert specific jurisdiction over the Attorney Defendants.

C.   *The Exercise of Jurisdiction over the Attorney Defendants Would Offend Due Process*

The exercise of personal jurisdiction over the Attorney Defendants would also offend due process, thereby failing the second prong of the test necessary to find *in personam* jurisdiction in this matter.  In order to comport with due process, there must be a showing that defendant had "minimum contacts" with the forum state *and* that exercise of jurisdiction over the defendants will not offend "traditional notions of fair play and substantial justice."[86]

To establish minimum contacts, plaintiff must show that the Attorney Defendants "purposefully availed" themselves of the privilege of doing business in the forum state and that the defendants "should [have] reasonably anticipated being hauled into court there."[87]  Minimum contacts require more than just a reasonable expectation that a tortious foreign act will have New York consequences, which in any case is absent here.  Foreseeability must be coupled with evidence of purposeful New York affiliation.[88]

---

[84] *See also Pocahontas Supreme Coal Co., Inc. v. National Mines Corp.*, 90 F.R.D. 67 (S.D.N.Y. 1981) (holding that where no injury took place in New York, jurisdiction did not exist by virtue of section 302(a)(3)).

[85] *See Ingraham v. Carroll,* 90 N.Y.2d 592, 596, 687 N.E.2d 1293, 1295, 665 N.Y.S.2d 10, 12 (1997)(*emphasis in original*).  Further, this section "necessitates some ongoing activity within New York State". *See id.* (*emphasis in original*).

[86] *Carpino v. National Store Fixtures, Inc.*, 275 A.D.2d 580, 712 N.Y.S.2d 684 (3d Dep't 2000); *Stewart v. Vista Point Verlag & Ringer Publishing,* 2000 U.S. Dist. LEXIS 14236 * 14 (S.D.N.Y. Sept. 29, 2000), *aff'd,* 20 Fed. Appx. 91 (2d Cir. 2001).

[87] *Stewart, supra,* 2000 U.S. Dist. LEXIS 14236 at *14 (citing *World-Wide Volkswagen v. Woodson* 444 U.S. 286, 297 (1980)); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[88] *Carpino, supra,* 275 A.D.2d at 582, 712 N.Y.S.2d at 687.

As noted above, it is not alleged – nor could it be alleged – that the Attorney Defendants have availed themselves of this jurisdiction, and certainly, inasmuch as they live, work and transact business outside the jurisdiction, they would have no reason to anticipate being sued here. Further, not only would the exercise of jurisdiction of this Court's jurisdiction be unfair and unwarranted, it would also reward plaintiff's spurious attempt to escape the proper jurisdiction for his claims.

D. *There is No Personal Jurisdiction under the RICO Statute*

Finally, under 18 U.S.C. § 1965(b), upon which plaintiff relies to assert personal jurisdiction for the RICO claims, minimum contacts must first be alleged as between at least one of the defendants and the venue through traditional means before any nationwide jurisdiction provisions of the statute will apply. [89] No such allegations are made, and as noted above no such minimum contacts can be alleged or exist. Thus, this Court has no personal jurisdiction over the defendants.

## POINT III

## IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO D.C., AND A STAY OF ALL PROCEEDINGS SHOULD BE ORDERED

If this action is not dismissed at this time, it should be transferred to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. §1404(a). [90] Likewise, a stay of these proceedings should be ordered pending the trial and determination of the D.C. Action.

A. *Transfer to the District of Columbia is Warranted*

There is a two-prong inquiry that the Court must perform in determining a §1404(a) motion to transfer: "first, 'whether the action could have been brought in the proposed transferee

---

[89] *See Regency Capital, LLC v. CorpFinance Int'l, Inc.,* 2003 U.S. Dist. LEXIS 18701, *4 (S.D.N.Y. Oct. 9, 2003), *citing PT United Can Co. v. Crown Corp & Seal Co., Inc.,* 138 F.3d 65, 71 (2d Cir. 1998).

[90] 28 U.S.C § 1404(a) provides for the transfer of federal litigation and a change of venue: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

forum'; and second, 'whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.'"[91]

As to the first prong, the instant action could well have been brought in the District of Columbia, and no doubt, plaintiff should have venued this frivolous action there, where the D.C. Action is now pending.  Plaintiff and Cartinhour are actively engaged as parties in that litigation – litigating the very issues recast in this Complaint – and the Attorney Defendants practice there, where some are counsel in the D.C. Action.  Of course, plaintiff elected to commence this action in New York, hoping for obfuscation, inconsistency and delay, as the fallacies in his position have become clear to the Court in the D.C. Action.[92]  In short, plaintiff's forum shopping spree in New York does not diminish the personal jurisdiction of the District of Columbia District Court over the parties in this action.

The second prong of the §1404(a) analysis looks to the convenience of the parties and witnesses, and the interests of justice.[93]

Even a cursory review of each of these factors militates toward transfer to the District of Columbia: the parties and other witnesses to the various transactions are all in the D.C. area[94], including Cartinhour and all the Attorney Defendants.  The remaining defendants, who have not

---

[91] *Solar v. Annetts*, 707 F. Supp 437, 442 (S.D.N.Y. 2010), *citing Blum v. Salomon*, 2006 U.S. Dist. LEXIS 94267 at *3 (S.D.N.Y. Dec. 26, 2006). *See also AIG Financial Products v. Public Utility Dist. No. 1*, 675 F. Supp. 2d 354, 367 (S.D.N.Y. 2009); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

[92] Plaintiff's desperation to escape that court's jurisdiction is clear from his unsuccessful motion to recuse the trial judge, *Robinson v. Cartinhour*, 691 F. Supp. 2d 65 (D.C. 2010).

[93] *Amersham Pharmacia Biotech v. The Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998). *See Solar*, 707 F. Supp. 2d at 442; *AIG*, 675 F. Supp. 2d at 368.  In assessing the wisdom of transfer, the "courts commonly consider at least nine factors, *viz.*, (1) the convenience of the witnesses; (2) the location of the relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."

[94] *See Exh. A, Complaint at* ¶¶ *4-12, 17.*

appeared in this action, are alleged to be citizens of Serbia, who "may be found ... in New York."[95] The relevant documents are not only in the District of Columbia, they are already before the District Court in the D.C. Action. The interactions and alleged partnership between Cartinhour and plaintiff, and Cartinhour's attorneys' efforts to litigate on their client's behalf, comprise the locus of operative facts, and all took place in the District of Columbia.[96] The D.C. District Court is equally capable of compelling the attendance of unwilling witnesses as this Court, and the relative means of the parties seems a non-factor, except for the fact that "Mr. Robertson has admitted to taking nearly all the partnership money in personal loans."[97]

Certainly, the District Court in D.C., given the complex proceedings and imminence of trial in the D.C. Action, has a familiarity with the underlying facts and the governing law, which given the locus of facts in D.C, would be D.C. law. Moreover, little weight should be accorded plaintiff's choice of the Southern District of New York as his forum for this action, as his prior choices of the District of Columbia, to litigate substantially the same issues as here, and the Bankruptcy Court in Tennessee, which proceedings have recently been transferred to the District of Columbia[98], show that he has selected a New York forum now only as a tactical maneuver to evade and frustrate the swift administration of justice in the D.C. Action.

Finally, and perhaps most significantly, the interests of justice warrant a transfer. It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer.[99] There is a strong and long-standing policy favoring litigation of

---

[95] *See Exh. A*, Complaint at ¶¶14-17.

[96] *See Exh. A*, Complaint ¶30, 79.

[97] *See Exh. B at p. 110.*

[98] *Exh. L*

[99] *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999), *citing, Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 164 (S.D.N.Y. 1992); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (holding that the presence of related litigation in the transferee forum weighs heavily in favor of transfer); *Nieves v. American Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988)

related claims in the same tribunal.[100]   It has been held that "unless there are compelling reasons

otherwise, there is no justification for separate trials in separate districts."[101]   The pendency of

related claims has been a persuasive factor in ordering the transfer of cases under § 1404(a).[102]

The litigation of related claims in the same tribunal's intended to avoid duplicitous litigation or

inconsistent results.[103]

The instant action evolves from the D.C. Action, and the underlying facts and issues

therein, as the D.C. Court found in suggesting the propriety of transfer that "the New York

action centers largely on the same set of operative facts at issue in this."[104] To allow this action

to remain in this venue runs a risk of inconsistent issue determination, and guarantees a waste of

judicial resources.

As a general rule, in assessing transfer under §1404(a) "[w]here there are two competing

lawsuits, the first suit should have priority."[105]   This rule "embodies considerations of judicial

administration and conservation of resources" by avoiding duplicative litigation and honoring the

plaintiff's choice of forum.[106]  Here, no special circumstances exist as to allow plaintiff's forum

shopping ploy to be sustained.  Accordingly, if this action is not dismissed, then transfer of the

---

(holding that transfer is particularly appropriate where there is a pending lawsuit in the transferee
district involving the same facts, transactions, or occurrences).
[100] *Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968); *Schneider v. Sears,* 265 F.
Supp. 257, 266-67 (S.D.N.Y. 1967).
[101] *Teleprompter Corp. v. Polinsky,* 447 F. Supp. 53, 56 (S.D.N.Y. 1977); *Faigenbaum
Machinery, Inc. v. Scott & Williams, Inc.,* 344 F. Supp. 1267, 1271 (S.D.N.Y. 1972).
[102] *See, e.g., AIG, supra,* 675 F. Supp. 2d at 372; *Amersham, supra,* 11 F. Supp. 2d at 730;
*Duplan Corp. v. Deering Milliken, Inc.,* 324 F. Supp. 102, 103 (S.D.N.Y. 1970); *Henry I. Siegel
Co. v. Koratron Company,* 311 F. Supp. 697, 700-01 (S.D.N.Y. 1970); *Schlusselberg v. Werly,*
274 F. Supp. 758, 764 (S.D.N.Y. 1967); *Schneider,* 265 F. Supp.at 266-67.
[103] *See Goggins v. Alliance Capital Management,* 279 F. Supp 2d 228, 231 (S.D.N.Y. 2003).
[104] *See Exh. K at pp. 3.*
[105] *Employers Insurance of Wausau v. Fox Entertainment,* 522 F.3d 271 (2d Cir. 2008); *citing
First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion
Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir. 1986).
[106] *Id.* at 80.

action to the District of Columbia is appropriate as mandated under §1404(a) and in the interests of justice.

B.   *The Court Should Stay These Proceedings Pending a Determination of this Motion, and in the Alternative, Pending a Determination of the Issues in the D.C. Action*

The federal courts have wide latitude in granting stays of further proceedings in an action, particularly where there is duplicitous litigation in another forum.[107]   The court has the inherent power to stay an action to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[108]   The five factors considered in determining whether to grant a stay are: "(1) private interests of plaintiff in proceeding expeditiously with civil litigation as balanced against prejudice to plaintiffs if delayed; (2) private interests of and burden on defendants; (3) interests of court; (4) interests of persons not parties to civil litigation; and (5) public interest."[109]   Each of these factors weighs in favor of a stay of all proceedings pending the determination of this Motion, and if the Motion is somehow denied, then a stay of this action would be prudent and just, pending resolution of the D.C. Action.

Plaintiff will not be prejudiced by a stay of this action, as he will have the opportunity to litigate and resolve the very same issues in the D.C. Action, where trial is imminent.[110]   Further, here the interests of the Court, the defendants and the public are all served by avoiding the unnecessary risk of inconsistent issue resolution and the squandering of the resources of the Court and the defendants.   Beyond mere efficiency, if this action is neither dismissed nor transferred, a stay will allow the expeditious and just resolution of most if not all of the issues raised in plaintiff's Complaint.

---

[107] *American Steamship Owners v. Lafarge North America, Inc.*, 474 F. Supp. 2d 474, 478 (S.D.N.Y. 2007), *citing Rosenfeld v. Schwitzer Corp.*, 251 F. Supp. 758, 763 (S.D.N.Y. 1966).
[108] *Landis v. North American Co.*, 299 U.S. 248, 254-55, (1936).
[109] *Kappel v. Comfort*, 914 F. Supp 1056, 1058 (S.D.N.Y. 1996).
[110] *See Exh. K at pgs. 3-4.*

Moreover, Cartinhour has already established to the satisfaction of the Court in the D.C. Action that there is a likelihood of success on the merits in connection with the preliminary injunction long held there.[111]  The prejudice to Cartinhour, at age 83, of having to defend this action in New York, while trying the D.C. Action on the same set of facts, is clear. Similarly, compelling the Attorney Defendants to travel to New York and engage in proceedings and discovery, when the Complaint fails to state a cognizable claim, this Court lacks personal jurisdiction over them, and plaintiff's own conduct – which gave rise to his lawsuit here – has already been exposed as unconscionable, would establish an onerous hardship.

Accordingly, a stay of discovery pending the determination of the instant Motion, and if the Motion is denied, a brief stay of these proceedings until the conclusion of the trial in the D.C. Action – which in any case is set for February 2011 – is proper and in the interests of justice.

**CONCLUSION**

For the reasons set forth herein, and in the accompanying Declaration, exhibits, and Affidavits, it is requested that this Honorable Court enter an Order dismissing the Complaint in its entirety; in the alternative, transferring this action to the D.C. District Court, and staying this proceeding pending a resolution of this Motion, and in the alternative, to stay this action pending resolution of the D.C. Action, and for such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
　　　 January 13, 2011

                                        Respectfully submitted,
                                        RIVKIN RADLER LLP
                                        *Attorneys for Attorney Defendants*

                        By:

                                        Peter C. Contino
                                        926 RXR Plaza
                                        Uniondale, New York 11556-0111
                                        (516) 357-3000

---

[111] *See Exh. B, at p. 113.*

25