## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **WADE ROBERTSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 11-1919 (ESH)** |
| | ) | |
| **WILLIAM C. CARTINHOUR, JR.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## MEMORANDUM OPINION

Yet again, this Court must confront the issue of sanctions arising from the litigation brought by Wade Robertson against Dr. William Cartinhour. This time the issue is whether to impose sanctions against Ty Clevenger for filing excessive and frivolous pleadings on behalf of his client, Wade Robertson, in violation of 18 U.S.C. § 1927. To date, in related litigation, Clevenger has been sanctioned by the D.C. Circuit in orders issued on October 19 and December 14, 2010;[1] by Chief Judge Lamberth in a related bankruptcy proceeding on April 2, 2012;[2] and by Bankruptcy Judge Teel in a seventy-nine page opinion where Clevenger was fined for, *inter alia*, his "complete disregard for the facts and law in advancing . . . frivolous argument[s] [which] generated a staggering amount of work for the court, and has put Cartinhour and his attorney to the unnecessary burden of defending against frivolous arguments in this and other

---

[1]Order at 1, *Robertson I*, No. 10-7033 (D.C. Cir. Dec. 14, 2010); Order at 1, *Robertson I*, No. 10-7033 (D.C. Cir. Oct. 19, 2010) (imposing costs for unwarranted filing of fourth motion to stay district court proceedings).

[2] Order, *In Re: W.A.R. LLP*, No. 12-cv-1574 (D.D.C. Apr. 2, 2012).

courts."[3]  If anything, Clevenger's conduct here is even more egregious than in these related

cases.  Therefore, this Court will grant the motion and sanction Clevenger for his vexatious and

abusive litigation tactics in this case.[4]

## BACKGROUND

This Court's involvement in Robertson's suits against Cartinhour dates back to 2009

when Robertson unsuccessfully sued Cartinhour, which ultimately resulted in a jury verdict in

favor of Cartinhour for $7 million, including punitive damages of $3.5 million.  The tortured

history relating to that case, "*Robertson I*," and the current one, which has been referred to as

"*Robertson II*," was last set forth in detail in a Memorandum Opinion dated March 16, 2012.  In

that opinion, this Court granted a motion to dismiss all counts, including charges of RICO and

state common law claims, that Clevenger initially brought on Robertson's behalf against

Cartinhour, his attorneys ("Kearney Attorneys") in *Robertson I* and others in the Southern

District of New York.[5]  Given the detailed recitation that appears in that Memorandum Opinion,

the Court will only to summarize the relevant events that occurred subsequent to March 16,

2012.

> 1. On April 2, 2012, Chief Judge Lamberth imposed sanctions of
> $7,249.00 against Robertson and Clevenger jointly, recognizing that they had
> filed a frivolous bankruptcy case in an "attempt to stall litigation in this district in
> front of Judge Ellen Huvelle"[6] and finding that sanctions were warranted because

---

[3]*In re W.A.R. LLP*, No. 11-00044, 2012 Bankr. LEXIS 1989, at *73 (Bankr. D.D.C. May 3, 2012).

[4]Clevenger has also recently been sanctioned for similar conduct in the Fifth Circuit.  *Erwin v. Russ*, No. 10-51125, 2012 U.S. App. LEXIS 11101, at *9-11 (5th Cir. June 1, 2012)

[5]*See Robertson II*, No. 11-cv-1919, 2012 U.S. Dist. LEXIS 35217, at *2 (D.D.C. Mar. 16, 2012).

[6] Order at 1, *In re: W.A.R. LLP*, No. 11-cv-1574 (D.D.C. June 25, 2012) (describing Order of April 2, 2012).

of "the groundless nature of the [bankruptcy] appeal, unfounded whatsoever in the law . . . ."[7]

2.   On April 3, 2012, in an unpublished opinion, the D.C. Circuit affirmed the jury's $7 million verdict in *Robertson I* and found that Robertson presented "no meritorious argument on appeal."[8]

3.   On May 4, 2012, Bankruptcy Judge Teel granted a motion for sanctions and fined Clevenger and Robertson $10,000 each, finding that "Clevenger joined Robertson in knowingly and in bad faith advancing frivolous arguments in [the] bankruptcy case."[9]

4.   On June 12, 2012, Clevenger filed an appeal in the D.C. Circuit seeking review of this Court's dismissal of *Robertson II*.

5.   On June 25, 2012, Chief Judge Lamberth ordered Clevenger and Robertson to show cause why they "should not be enjoined from further filings [in the bankruptcy-related matters], filing further appeals from the underlying bankruptcy case, and from filing new related matters in this district court."[10]  In response to their objections, Chief Judge Lamberth responded to their objections on July 25, 2012, by listing the egregious behavior that Robertson and Clevenger have engaged in dating back to the inception of *Robertson I*.[11]

Understandably with this history as backdrop, Cartinhour has now moved for sanctions

against Clevenger for attorney's fees and costs incurred in *Robertson II* in the amount of

$158,954.28.  (*See* Cartinhour Mot. For Sanctions Against Ty Clevenger, Esq. ("Cartinhour

---

[7] Memorandum Order at 6-7, *In re: W.A.R. LLP,* No. 11-cv-1574 (D.D.C. Apr. 2, 2012).  As set forth by Chief Judge Lamberth, the April 2, 2012 Order produced a veritable onslaught of motions, all of which were denied. Order at 1-3, *In re: W.A.R. LLP*, No. 11-cv-1574 (D.D.C. June 25, 2012).

[8] *Robertson I*, No. 11-7076, 2012 U.S. App. LEXIS 6674, at *3 (D.C. Cir. 2012).

[9] *In re W.A.R. LLP*, No. 11-00044, 2012 Bankr. LEXIS 1989, at *4 (Bankr. D.D.C. May 3, 2012).

[10] Order at 3, *In re: W.A.R. LLP*, No. 11-cv-1574 (D.D.C. June 25, 2012).

[11] Order at 1-3, *In re: W.A.R. LLP*, No. 11-cv-1574 (D.D.C. July 25, 2012).

Mot.").)[12]  In his initial response, Clevenger sought extensive discovery relating to the bills of Cartinhour's New York attorneys ("Yuzek Attorneys"); challenged whether Cartinhour actually incurred these fees in this litigation and whether the Yuzek Attorneys were acting under the direction of the Kearney Attorneys; and sought discovery from Cartinhour relating to whether he authorized the lawyers to act on his behalf.[13]  Clevenger also sought 90 days to oppose the sanctions motion.[14]  These motions were denied and finally, on May 21, 2012, Clevenger filed his response, in which he characterizes the Kearney Attorneys as "not honest men by nature" (Clevenger's Response to Mot. for Sanctions Purportedly Filed on Behalf of Def. Cartinhour ("Clevenger's Opp'n") at 6) and argues that they have failed to meet their burden under 28 U.S.C. § 1927; that the Court cannot award sanctions for events that occurred in the Southern District of New York; and that the motion is brought for an improper purpose.  (*Id.* at 2, 4, 6.) These arguments are, as demonstrated below, utterly frivolous.

## ANALYSIS

## I.   LEGAL STANDARD

Cartinhour seeks sanctions under 28 U.S.C. § 1927, which provides that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

---

[12]Cartinhour does not seek attorney's fees from Robertson because it would be "objectively futile" since he is unable to pay the approximately $6.35 million outstanding from the jury verdict in *Robertson I*.  (*Id.* at 7.)

[13] Mot. to Permit Discovery, to Compel Disclosure, and to Compel a Showing of Authority to Act, *Robertson II* (D.D.C. May 7, 2012) ("Clevenger's Mot. to Compel Discovery").

[14] Mot. to Enlarge Time in Which to Respond in Which to Respond to Mot., with Notice of Movant's Intended Opp'n, *Robertson II* (D.D.C. Apr. 27, 2012) ("Clevenger's Mot. for an Extension of Time").

because of such conduct."  28 U.S.C. § 1927.  The purpose of § 1927 is to allow the Court "to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992).

The District of Columbia "'has not yet established whether the standard [for unreasonable and vexatious conduct under section 1927] should be recklessness or the more stringent bad faith.'"  *Huthnance v. Dist. of Columbia*, 793 F. Supp. 2d 177, 181 (D.D.C. 2011) (quoting *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998)) (some internal quotation marks omitted); *see also Wallace*, 964 F.2d at 1218-19.  However, it is clear that, to warrant such a sanction, the attorney's conduct must be "*at least* 'reckless.'"  *Id*. at 1217.  This means that there must be a "'conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.'"  *Id*. at 1220 (quoting *Restatement (Second) of Torts* § 500 cmt. g (1964)).  That is, the movant must show that the attorney in question acted recklessly or deliberately "in the face of a known risk."  *Wallace*, 964 F.2d at 1220.

According to Cartinhour, Clevenger has "multiplie[d] the proceedings . . . unreasonably and vexatiously" in two ways.  First, Clevenger filed *Robertson II* knowing that it was meritless and, second, he persisted in vigorously litigating *Robertson II* even after the jury's findings in *Robertson I* made clear that the allegations in *Robertson II* were baseless.  These acts, Cartinhour contends, show a "serious and 'studied disregard for an orderly judicial process'" which was intended to evade this Court's jurisdiction and increase the cost of litigation to Cartinhour. (Cartinhour Mot. at 3 (quoting *Jensen v. Phillips Screw Company*, 546 F.3d 59, 64 (1st Cir. 2008)).)

The D.C. Circuit has interpreted § 1927 to "impose[] a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim." *Wallace*, 964 F.2d at 1220-21 (citing *Thomas v. Capital Sec. Servs., Inc*., 836 F.2d 866, 875 (5th Cir. 1988) (en banc)).  In multiple cases, it has found § 1927 sanctions appropriate where "the attorney's behavior has been repeated or singularly egregious," for example where the attorney "'repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation.'"  *Wallace*, 964 F.2d at 1220-21 (quoting *Fritz v. Honda Motor Co*., 818 F.2d 924, 925 (D.C. Cir. 1987) (alteration in original)); *see also Reliance Ins. Co. v. Sweeney Corp., Maryland*, 792 F.2d 1137, 1139 (D.C. Cir. 1986) ("With so many worthy claims waiting to be resolved, we cannot tolerate unfounded and undeveloped claims.  Sanctions for this behavior are clearly appropriate."); *see also The Jolly Group, Ltd. v. Medline Indus., Inc*., 435 F.3d 717, 720 (7th Cir. 2006) ("We have also interpreted § 1927 to impose a continuing duty upon attorneys to dismiss claims that are no longer viable.") (internal quotation marks omitted).

## II.    CLEVENGER'S CONDUCT IN ROBERTSON II

Applying these standards, the Court has no difficulty concluding that sanctions are appropriate.  First, Clevenger's decision to file *Robertson II* in the Southern District of New York, while *Robertson I* was pending in this Court, served to multiply proceedings, and, as recognized by this Court and the judge in the Southern District of New York, it was done for the improper purpose of forestalling litigation in *Robertson I*.  Neither Cartinhour nor the Kearney Attorneys had any contacts with New York, and as had been set forth in *Robertson II*, Robertson was invited to amend (but chose not to do so) his complaint in *Robertson I* to include many of the very claims he subsequently sought to bring in *Robertson II*.  *See Robertson II*, 2012 U.S. Dist. LEXIS 35217, at *17-20.  Rather than bringing his claims in the suit he had initiated in this

Court, he sought to enjoin litigation here by invoking the jurisdiction of both the Southern

District of New York and the Bankruptcy Court.  *Id*. at *15-18.  In particular, several months

before trial was to commence in *Robertson I*, Clevenger filed a rambling, 149-paragraph

complaint that, although it was styled as a RICO action, centered on many of the same facts and

claims as were presented in *Robertson I*.  Cartinhour sought an anti-filing injunction against

Robertson, which this Court denied without prejudice, but in its Memorandum Opinion, the

Court discussed Robertson's blatant misconduct in *Robertson I*, and although it declined at that

time to enter an injunction, it stated:

> In this case . . . the record provides support for Cartinhour's claim that
> many of Robertson's filings have been frivolous or harassive.  Robertson has been
> sanctioned by both this Court[15] and the Court of Appeals[16] for filing unnecessary
> motions, and there can be little doubt that Cartinhour and his associates feel
> harassed by Robertson's conduct. . . . [H]owever, the Court cannot say, at this
> time, that Robertson's filings have reached the level to warrant issuance of an
> anti-suit injunction, which the Court reserves for only the most egregious cases.
>
> The Court cautions Robertson, however, that if he persists, at some point a
> continu[ed] pattern of groundless and vexatious litigation will support an order
> against further filings or complaints without the permission of the courts, as well
> as other sanctions. Where a litigant acts in bad faith, or with a harassive purpose,
> an order enjoining future suits without prior approval is both appropriate and
> necessary.  The Court therefore warns Robertson, as did the Court of Appeals,
> that if he should continue to pursue his current strategy of unnecessarily
> proliferating this litigation, this Court will not hesitate to entertain a renewed
> motion for an injunction.  In the alternative, . . . it may well be appropriate to
> reconsider this motion after the above-captioned case is adjudicated in February,

---

[15] *Robertson I*, 711 F. Supp. 2d 136, 139 (D.D.C. 2010) (imposing sanction of $1,887.00 for unreasonably and vexatiously filing a motion to quash and motion for reconsideration).

[16] The Court of Appeals imposed sanctions of $6,446.06 against Robertson after he filed his fourth motion to stay despite being warned less than a week earlier that "the Court looks with extreme disfavor upon unnecessary pleadings."  Order Awarding Fees and Costs at 1, *Robertson I*, No. 10-7033 (D.C. Cir. Dec. 14, 2010); Order on Emergency Mot. for Order in Aid of Jurisdiction at 1,  *Robertson I*, No. 10-7033 (D.C. Cir. Oct. 19, 2010).

> since many of the issues raised in the New York action could well be barred by
> the doctrine of collateral estoppel.

Mem. Op. at 5-6, *Robertson I*, December 30, 2010 (internal citations and quotations omitted,

internal footnotes added).[17]

Following the completion of the trial in *Robertson I* and the entry of a judgment of $7

million against Robertson, Judge Swain in the Southern District of New York transferred

*Robertson II* to this Court, finding that having entered judgment in the underlying D.C. Action

and having presided over that jury trial, this Court is in the best position to review any further

briefing and make res judicata determinations. *Robertson II*, 2011 U.S. Dist. LEXIS 126030, at

*13. She also recognized the improper purpose of the suit filed by Clevenger:

> Robertson's decision to file suit in the Southern District of New York appears to
> have been principally a tactical maneuver to avoid the jurisdiction of the D.C.
> court, and so should be accorded little deference.

*Id*.[18]

Following the transfer of this case to the undersigned in November 2011, and while the

---

[17]Nor can Clevenger immunize himself by relying on the duty to zealously represent his client.
(Clevenger Opp'n at 7.)  An attorney also has a duty to the profession and the Court and it is his
responsibility to fulfill both.  "While a party or counsel is not to be penalized for maintaining an
aggressive litigation posture, attorneys do not serve the interests of their clients, of the
profession, or of society when they assert claims or defenses grounded on nothing but tactical or
strategic expediency." *Westmoreland v. CBS*, 770 F.2d 1168, 1180 (D.C. Cir. 1985) (internal
alterations, quotation marks, and citations omitted); *see Davydenko v. Brasher's Sacramento
Auto Auction, Inc. (In re Luxury Imps. of Sacramento, Inc.)*, No. 2:11-cv-03324, 2012 U.S. Dist.
LEXIS 64623, at * 3-5 (E.D. Cal. May 7, 2012) (sanctioning attorney for failing to dismiss
appeal and thereby wasting the time of opposing counsel and the court); *Fastov v. Christie's Int'l
PLC*, 42-43 (D.D.C. 2008) (invoking § 1927 and the Court's inherent authority to sanction
litigant for all fees associated with defending against claims initiated in bad faith).

[18]Robertson, proceeding *pro se*, petitioned the Second Circuit for a writ of mandamus to vacate
Judge Swain's transfer order.  Pet. for Writ of Mandamus, *Robertson II*, No. 11-4925 (2d Cir.
Nov. 29, 2011).  That petition was denied on April 2, 2012.

parties were briefing the motion to dismiss, Clevenger filed yet another motion for recusal,[19] which rehashed many of the same arguments which had previously been made by Robertson and which had been rejected by this Court[20] and the Circuit Court in *Robertson I*.[21]  Again, the parties had to waste their time and resources responding to the motion[22] and the Court had to write another memorandum opinion denying a request for recusal.[23]

Then, on March 16, 2012, the Court issued its Memorandum Opinion dismissing *Robertson II* in its entirety.  *Robertson II*, 2012 U.S. Dist. LEXIS 35217, at *2.  As is clear from that opinion, this second action was not only wasteful and duplicative, it was foreclosed as a matter of law.  *Id.* at *22-32 (explaining the effect of *Robertson I*–that the majority of the claims were barred by the doctrines of res judicata, judicial estoppel and the requirement of using the appeal process for correction of alleged trial errors).  And, as further explained, there were a host of other reasons for throwing out the remaining claims. *Id.* at *32-58. [24]

---

[19]Pl.'s Mot. to Recuse Pursuant to 28 U.S.C. § 455, *Robertson II* (D.D.C. Feb. 12, 2012).

[20]*Robertson I*, 691 F. Supp. 2d 65, 77-80 (D.D.C. 2010).

[21]*In re Robertson*, No. 10-5231, 2010 U.S. App. LEXIS 19454 (D.C. Cir. Sept. 15, 2010); *see also Robertson I*, 429 Fed. Appx. 1, 4 (D.C. Cir. 2011).

[22]*See* Def. Cartinhour's Opp'n to Pl.'s Mot. to Recuse Pursuant to 28 U.S.C. § 455, *Robertson II* (D.D.C. Feb. 27, 2012); Kearney Attorneys' Opp'n to Pl.'s Mot. to Recuse Pursuant to 28 U.S.C. § 455, *Robertson II* (D.D.C. Feb. 27, 2012).

[23]Memorandum Opinion & Order, *Robertson II* (D.D.C. Mar. 16, 2012).

[24]The plaintiff, still represented by Clevenger, appealed this decision to the Circuit on June 5, 2012, and paid the filing fee, despite their protestations of poverty.  (*See* Clevenger Opp'n at 7; Pl.'s Objections . . . & Request for De Novo Review at 6-7, *In re: W.A.R. LLP*, No. 11-00044 (D.D.C. Bankr. May 18, 2012); Debtor's Mot. . . . For Relief from Judgment of the Court's May 4, 2012 Mem. and Orders at 2-4, *In re: W.A.R. LLP*, No. 11-00044 (D.D.C. Bankr. May 17, 2012); Pl.'s First Mot. . . . For Relief from Judgment of the Court's May 4, 2012 Mem. and Orders, *In re: W.A.R. LLP*, No. 11-00044 (D.D.C. Bankr. May 17, 2012).

Given the Court's rejection of the claims in *Robertson II* as being flatly inconsistent with Robertson's claims in *Robertson I*, the jury's verdict for $7 million in that case, and Clevenger's course of conduct throughout this litigation, the Court is convinced, as were Judges Swain and Lamberth, that *Robertson II* was brought for no legitimate purpose but rather for harassment and delay.  *See* Order at 7, *In re W.A.R., L.L.P.*, No. 11-cv-1574 (D.D.C. Apr. 2, 2012); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996) ("The total lack of substance in the plaintiff's RICO claims and the egregious and unjustified neglect of the required statutory elements give rise to the inference that the action was filed for improper purposes."), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (mem.).  Most importantly, the jury unanimously found that Robertson had breached his fiduciary duties to Cartinhour and, therefore, there could be *no* basis in law or fact for Clevenger's allegations in *Robertson II* that Cartinhour and others had conspired to defraud Robertson.  By pursuing *Robertson II* after the verdict in *Robertson I*, Clevenger was far more than recklessly indifferent; he acted in bad faith and with utter disregard for the judicial system.[25]

Clevenger and his client were put on clear notice by this Court on December 30, 2010,

---

[25]As noted, Clevenger has already been sanctioned in a related bankruptcy proceeding, *In re W.A.R. LLP.*, No. 11-0004 (Bankr. D.D.C. May 3, 2012) (fining Clevenger for frivolous filings), and by the Court of Appeals, Order at 1, *Robertson I*, No. 10-7033 (D.C. Cir. Oct. 19, 2010) (imposing costs for unwarranted filing of fourth motion to stay district court proceedings).  Prior to imposing those sanctions, the Circuit Court had summarily denied: motions which Clevenger filed seeking disqualification of and sanctions against Cartinhour's counsel, *see* Order at 1, *Robertson I*, No. 10-7033 (D.C. Cir. Sept. 21, 2010); a petition for mandamus seeking recusal, *see Robertson I*, No. 10-5231, 2010 U.S. App. LEXIS 19454, at *1 (D.C. Cir. Sept. 15, 2010); a motion for clarification and reconsideration, where the Court explicitly warned him that it "will not hesitate to impose sanctions" for unnecessary and frivolous filings under 28 U.S.C. § 1927 and D.C. Cir. Rule 38, *see* Order at 1-2, *Robertson I*, No. 10-7033 (D.C. Cir. Sept. 3, 2010); Robertson's emergency motion to stay a preliminary injunction, *see* Order at 1, *Robertson I,* No. 10-7033 (D.C. Cir. June 16, 2010).

that a "continu[ed] pattern of groundless and vexatious litigation" would not be tolerated. (Mem.

Op. at 6, *Robertson I* (D.D.C.) (alternation in original).)  Despite this, Clevenger did not heed the

warnings.  Instead, he defied the Court by pursuing baseless claims and arguments.  Sanctions

for this bad faith conduct are clearly warranted.[26]  The Court, however, recognizes that it

declined to find that Robertson's behavior prior to the verdict in *Robertson I* had reached a level

of egregiousness that would justify the issuance of an injunction, (*id.*), and it is mindful that the

Court's authority to sanction should be exercised sparingly.  *Wallace*, 964 F.2d at 1220.  It will

therefore only impose sanctions commencing with the entry of judgment on February 25, 2011,

in *Robertson I* for conduct occurring in the district courts of D.C. and the Southern District of

New York.[27]  To be clear: the sanctions award does not include costs or time spent on the

mandamus petition filed in the Second Circuit because that was filed by Robertson, as a *pro se*

litigant (*see* Clevenger Opp'n, Ex. 2 (Clevenger Aff.)) and is not clearly attributable to

Clevenger.

---

[26] In circuits that require a finding of bad faith for sanctions under § 1927, it can be proven indirectly through evidence of objective actions that lead to an inference of subjective intent—such as filing a document that lacks a colorable basis in law or fact.  *Va. Hosp. Ctr.-Arlington Health Sys. v. Akl (In re Akl)*, 2011 Bankr. LEXIS 2287, at *18 (Bankr. D.D.C. June 14, 2011), *aff'd, Akl v. Va. Hosp. Ctr.*, No. 11-1449, 2012 U.S. Dist. LEXIS 72827 (D.D.C. May 25, 2012); *see, e.g.*, *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1209 (9th Cir. 2008) ("[A] finding of bad faith . . . may be demonstrated by actions delaying or disrupting the litigation."); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").

[27] Therefore, the Court need not address Clevenger's argument that § 1927 does not authorize sanctions for *commencing* a frivolous lawsuit, but only for conduct that occurs *after* litigation has begun.  (Clevenger Opp'n at 3.)  In addition, the Court is not awarding costs or fees for the mandamus petition in the Second Circuit which was filed *pro se* by Robertson.  (*See supra* note 18.)

In reaching this decision, the Court rejects Clevenger's argument that the Court is prohibited from imposing sanctions for conduct that occurred in this case, but while it was pending before a different judge in the Southern District of New York.  (Clevenger Opp'n at 4.) To be sure, courts generally refrain from imposing sanctions for actions in other cases before other judges, but that principle is inapplicable here.  *Raymark Indus. v. Baron*, No. 96-7625, 1997 U.S. Dist. LEXIS 8871, at \*23 n. 10 (E.D. Pa. June 23, 1997) ("The purpose of § 1927 is frustrated by the imposition of sanctions in two distinct *cases*, not in two different *courts*.") (emphasis added).[28]

In a similar case, *John Akridge Company v. Travelers Companies*, 944 F. Supp. 33, 34 (D.D.C. 1996), the plaintiff had originally filed a lawsuit in the District of Columbia which was dismissed.  He then filed a second suit based on the same underlying facts in the Circuit Court for Montgomery County, Maryland, which was removed to federal court in Maryland.  There, the judge recognized that the plaintiff was engaged in "blatant forum-shopping" and transferred the case back to the judge in D.C.  *Id.* (quotation marks omitted).  That judge imposed sanctions because the plaintiff had filed suit in Maryland "with the specific intent of circumventing this Court's dismissal of its earlier suit" and ordered him to pay the attorney's fees that had been incurred in both the Maryland and District of Columbia cases.  *Id.*; *see also BDT Products, Inc. v. Lexmark Int'l, Inc*., 602 F.3d 742 (6th Cir. 2010) (explaining that the Kentucky district court imposed sanctions for a frivolous action filed in California state court, removed to a district

---

[28] In his response, Clevenger relies on *Grid Systems Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319-20 (9th Cir. 1994).   (*See* Clevenger Opp'n at 4.)  However, that case is neither binding nor persuasive since the Fifth Circuit case on which it relied was subsequently qualified by *CJC Holdings, Inc. v. Wright & Lato, Inc*., 989 F.2d 791,793-94 (5th Cir. 1993), which explained that courts can impose sanctions for actions occurring in other courts when a litigant perpetrates "bad-faith conduct . . . in direct defiance of the sanctioning court."

court in California, and ultimately transferred to Kentucky); *In re Auction Houses Antitrust Litig.*, No. 00-cv-0648, 2004 U.S. Dist. LEXIS 23351, at * 26-28 (S.D.N.Y. Nov. 17, 2004) (sanctioning plaintiffs' attorney for filing an action in California which was later removed to a district court in California and transferred to the Southern District of New York for "caus[ing] defendants to incur excess costs, expenses and attorney's fees in defending against the Second . . . Action and having the matter properly brought before the Court, where it should originally have been brought."); *Pentagen Techs. Int'l., Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2001) (finding § 1927 sanctions appropriate where litigant filed successive lawsuits that were "designed to evade previous rulings" and that caused "needless occupation of judicial resources").  Ultimately, Clevenger's attempt to cloud the issue fails because the Court is imposing sanctions based only on his conduct in this case.[29]

Finally, Clevenger's professed inability to pay is irrelevant to a sanctions award under § 1927.  *See Shales v. Gen. Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 750 (7th Cir. 2009) ("No court would say, in a medical-malpractice action, that a doctor whose low standards and poor skills caused a severe injury should be excused because he does not have very many patients.  No more is a bad lawyer excused because he has few clients."); *accord Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-06 (10th Cir. 2008).[30]

---

[29] Under Clevenger's theory, Cartinhour should have filed a separate motion for sanctions in the Southern District of New York.  This approach would accomplish the very goal that Clevenger has sought throughout—needless, repetitive litigation in different venues.

[30] Clevenger's argument that the motion for sanctions is untimely because counsel waited an unreasonable amount of time is frivolous.  (*See* Clevenger Opp'n at 6.)  The motion was filed within a month of this Court's dismissal of *Robertson II.*

Pursuant to this award of fees and costs for time and expenses incurred starting on February 25, 2011 through March 31, 2012, counsel for Cartinhour shall resubmit documentation justifying those fees and costs within 10 calendar days of the date of this order. While the attorneys have already submitted bills and attested to the fact that these bills were incurred in the representation of Cartinhour (*see* Cartinhour Mot., Ex. F), the time and expenses prior to February 25, 2011, must be excluded and the total request must be recalculated.

Clevenger may file a response to this filing within 7 calendar days from the date of filing of the documentation for fees and costs, and Cartinhour may file a reply within 5 calendar days from the date of filing a response.

Having set this schedule, the Court is compelled to address at this time many of the roadblocks that Clevenger has tried to erect so as to protract this litigation further.  (*See* Clevenger's Mot. to Compel Discovery; Mot. for Extension of Time.)[31]  First, the bills submitted to date appear to fully satisfy the standard set forth in *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982), since they show each attorney's time, recorded to the nearest tenth of an hour, and each time entry is accompanied by a description of the work done and the hourly rate charged.  (*See* Cartinhour's Mot., Ex. F.)

---

[31]The D.C. Circuit has cautioned that sanctions litigation ought not turn into satellite litigation:

> "[T]he court must to the extent possible *limit the scope of sanction proceedings to the record," and allow discovery "only in extraordinary circumstances"* . . . . [as] these practices help to "assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions."

*McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C. Cir. 1986) (quoting Advisory Committee Note (1983) to Fed. R. Civ. P. 11) (emphasis added).

The maximum hourly fees of $550.00 for a partner with over thirty years of experience and $265.00 for an associate appear to meet any possible definition of reasonable.[32]  Further, contrary to Clevenger's argument (*see* Clevenger's Mot. to Compel Discovery at 3), there is no reason that Cartinhour's attorneys cannot recover for time spent consulting with attorneys for the co-defendants.  The Court, however, does agree that counsel must produce unredacted bills for those fees for which he is requesting compensation.  *See Ideal Elect. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997).

Clevenger's requests to take burdensome discovery, including the deposition of Cartinhour, will be denied since there are no "extraordinary circumstances."  *McLaughlin*, 803 F.2d at 1205.  There is no basis for his persistent and fanciful suggestion that the Kearney Attorneys have manipulated Cartinhour or that the time spent by Cartinhour's lawyers was not for his benefit.  Clevenger sued both Cartinhour and the Kearney Attorneys.  By making this tactical decision, he forced Cartinhour to hire a new set of attorneys so he cannot complain that they acted in a collaborative manner with the Kearney Attorneys.  Nor can he point to the minimal contact between Cartinhour and his lawyers as probative of a lack of authority given Cartinhour's precarious health.  Finally, he has no good faith basis for suggesting that Cartinhour was not in fact the client or refused to pay the bills, that there was a lack of authority to act on his behalf, that his counsel did not act in his best interests, or that the bills were "bogus."  (*Id.* at 6.)  Most importantly, the Court is unwilling to subject Cartinhour to any

---

[32] These rates are below those on the *Laffey* Matrix, which has been used as a guideline for reasonable fees in this jurisdiction, *see Hansson v. Norton*, 411 F.3d 231, 236 (D.C. Cir. 2005) (using the *Laffey* Matrix), and consistent with the rates permitted in the Southern District of New York for attorneys with similar experience.  *See Pyatt v. Raymond*, No. 10-cv-8764, 2012 U.S. Dist. LEXIS 58879, at *16-18 (S.D.N.Y. Apr. 25, 2012) (collecting cases); *Diplomatic Man, Inc. v. Nike, Inc*., No. 08-cv-139, 2009 U.S. Dist. LEXIS 29343, at *16 (S.D.N.Y. Apr. 6, 2009).

further harassment by either Clevenger or Robertson.  Enough is enough.

## CONCLUSION

For the foregoing reasons, the Motion for Sanctions is GRANTED to the extent that
Cartinhour is entitled to recover the fees and costs incurred by the Yuzek attorneys between
February 25, 2011 and March 31, 2012, for time spent litigating *Robertson II* in the district
courts of the Southern District of New York and the District of Columbia.  Within 10 days of
the date of this order, the attorneys shall file unredacted copies of the bills for which they are
seeking compensation but no other discovery will be permitted by Clevenger.  Clevenger may
file a response within 7 calendar days of the date of filing of the documentation and Cartinhour
may file a reply within 5 calendar days after that.  No motions for continuances or for
reconsideration by Clevenger will be permitted.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:  August 10, 2012